**Opinion issued February 4, 2014**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

**NO. 01-12-00234-CR**
_____

**WILLIAM NUGENT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 208th District Court**
**Harris County, Texas**
**Trial Court Case No. 1281254**

## MEMORANDUM OPINION

A jury found appellant, William Nugent, guilty of the offense of burglary of

a habitation.[1]  The trial court assessed his punishment at confinement for three

years, suspended the sentence, placed him on community supervision for three

---

[1] *See* TEX. PENAL CODE ANN. § 30.02(a)(1) (Vernon 2011).

years, and assessed a fine of $500. In one issue, appellant contends that the trial court erred in denying his motion to suppress evidence.

We affirm.

## Background

Isaias Ortiz testified that he owns a small "patio home" in Houston, Texas, but was away working as a consultant for a year in Bangkok, Thailand on January 11, 2010 when his home was broken into. He left the house furnished and with a stereo system and television. Ortiz explained that his niece would occasionally check on the house while he was out of the country, he had never met appellant, did not ask him to "guard" his house while he was gone, and nor did he give appellant permission to enter the house. In late January or early February 2010, Ortiz received an email from his niece informing him that "there was a break-in." Ortiz did not return to Houston until September 2010, and, at that time, spoke to law enforcement to identify and retrieve his Magnavox television and "amp receiver" that had been stolen.

Patsy Reeves, who lives next door to Ortiz's home, testified that on January 11, 2010 when she was home and getting ready to leave her house, she heard "noises" outside near the window air conditioning unit of Ortiz's home. After she opened her garage door as she waited for her boyfriend to come home, she saw a neighbor from across the street outside speaking with a deputy constable. Reeves

noticed that the air conditioning unit from Ortiz's house was no longer in the window, but was on the ground.

Former Harris County Precinct 5 Deputy Constable Ferguson testified that on January 11, 2010 around 6:00 p.m., he was dispatched with Deputy Aslam to Ortiz's home to investigate a burglary. When he arrived, he found that the front door of the house was secure, but the glass door at the back of the house was shattered, and he saw a brick on the floor inside the door. Ferguson also saw a window air conditioning unit lying on the ground. Inside the house, he saw electronics, including a television, and several items "scattered" throughout the house. Ferguson and Aslam attempted to "secure" the back door, and then Ferguson left while Aslam stayed to interview the "reportee."

Deputy Ferguson was again dispatched to Ortiz's home a few hours later in response to a report of a "burglary in progress." The dispatch operator told Ferguson of a report of a Caucasian male, wearing dark clothing and carrying a black, "flat" or empty backpack, walking toward the rear of the residence. When he arrived, Ferguson found appellant, who was lying on his back in the grass in the front yard, to the left of Ortiz's residence. As Ferguson approached appellant, he noted that appellant's clothing matched the description given to him by the dispatch operator, and he had a backpack that appeared to be "full." The backpack was lying on the ground next to appellant, only a few inches from his body.

Deputy Ferguson noted that appellant was wearing black "from head to toe," including black gloves and a hat. Appellant was unconscious, and Ferguson could smell a strong odor of alcohol on his breath. Although Ferguson was able to wake appellant by speaking to him, he had to "pick him up" to assist him in standing. Appellant had slurred speech and bloodshot eyes, and he was unsteady on his feet. Appellant, who could not stand or walk unassisted, told Ferguson that he did not know why he was at the house, or why Ferguson was speaking to him.

Deputy Ferguson arrested appellant for public intoxication and placed him in the back seat of Ferguson's patrol car. When Ferguson went back for the backpack, he opened it where it lay on the ground and saw a flat screen television and an amp receiver. Ferguson then went to the back of the residence and found that the back door was "again" open, even though he had secured the door a few hours earlier. Inside the house, Ferguson noted that the television and amp receiver that had been there earlier were missing.

Former Harris County Precinct 5 Deputy Constable S. Aslam testified that on January 11, 2010, she was dispatched to Ortiz's home to investigate a burglary. Aslam waited for Ferguson to arrive before entering the house to see if anyone was still inside. She noted that there was some furniture inside the house and the back door window had been shattered. Aslam was able to shut and lock a metal door, but because the door glass was broken, she could not secure the residence.

## Standard of Review

We review a trial court's denial of a motion to suppress evidence under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion and the trial court's application of the law to the facts de novo. *Id.* Almost total deference should be given to a trial court's implied findings, especially those based on an evaluation of witness credibility or demeanor. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). At a suppression hearing, a trial court is the sole and exclusive trier of fact and judge of the witnesses' credibility. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). Therefore, a trial court may choose to believe or disbelieve all or any part of a witness's testimony. S*tate v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). Where, as here, a trial judge does not make explicit findings of fact, we review the evidence in a light most favorable to the trial court's ruling. *Walter v. State*, 28 S.W.3d 538, 540 (Tex. Crim. App. 2000). We will defer to the trial court's fact findings and not disturb the findings on appeal unless the trial court abused its discretion in making a finding not supported by the record. *Cantu v. State*, 817 S.W.2d 74, 77 (Tex. Crim. App. 1991).

## Motion to Suppress

In his sole point of error, appellant argues that the trial court "harmfully erred" in denying his "motion to suppress evidence secured through an unreasonable search of his backpack" because there was no probable cause to support his arrest for public intoxication or burglary, the search was not performed incident to an arrest, and it was not justified as a "reasonable inventory."

The Fourth Amendment of the United States Constitution and article I, section 9 of the Texas Constitution protect against unreasonable searches and seizures. Absent a few specifically established and well-delineated exceptions, a warrantless search is per se unreasonable. *Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 1716 (2009); *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967). It is the State's burden to show that the search falls within one of the exceptions to the warrant requirement. *McDonald v. United States*, 335 U.S. 451, 454–55, 69 S. Ct. 191, 193 (1948). A "search incident to arrest" constitutes one of the exceptions. *Gant*, 556 U.S. at 338, 129 S. Ct. at 1716; *Chimel v. California*, 395 U.S. 752, 763, 89 S. Ct. 2034, 2040 (1969). A search "of the person becomes lawful [without a warrant] when grounds for arrest and accusation have been discovered . . . . " *U.S. v. Robinson*, 414 U.S. 218, 232, 94 S. Ct. 467, 475 (1973). Here, it is undisputed that Ferguson searched appellant's backpack without first obtaining a warrant.

6

Appellant first argues that Deputy Ferguson did not have probable cause to arrest him for public intoxication because there is no evidence that appellant "was anywhere except in a private yard while intoxicated" or "was a danger to himself or others."

A peace officer may arrest a person without a warrant when an offense is committed in his presence or within his view or if the officer has probable cause to believe an offense has been committed. TEX. CODE CRIM. PROC. ANN. art. 14.01(b) (Vernon 2005); *State v. Woodard*, 341 S.W.3d 404, 412 (Tex. Crim. App. 2011). Probable cause for an arrest exists if an officer, based on the facts and circumstances within the officer's knowledge, or of which the officer has reasonably trustworthy information, reasonably believes a particular person has committed or is committing an offense. *Woodard*, 341 S.W.3d at 412; *McGee v. State*, 105 S.W.3d 609, 614 (Tex. Crim. App. 2003).

A person commits the offense of public intoxication if the person "appears in a public place while intoxicated to the degree that the person may endanger the person or another." TEX. PENAL CODE ANN. § 49.02(a) (Vernon 2011). And a "public place" is defined as "any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops." TEX. PENAL CODE ANN. § 1.07(40) (Vernon Supp. 2013).

7

Here, Deputy Ferguson testified that he formed the opinion, based on the totality of the circumstances, that appellant was intoxicated and a danger to himself or others. He noted that appellant had the smell of alcohol on his breath and was "passed out" on the ground at the scene of a burglary. When awakened, Ferguson noted that appellant's eyes were bloodshot, his speech was slurred, and he had to be assisted into a standing position. Even then, appellant could not walk unassisted, but had to be helped by Ferguson. Ferguson also explained that appellant did not know why he was at Ortiz's home, and he had to ask why Ferguson was speaking to him. Ferguson's description of appellant's speech and physical condition was sufficient to warrant a reasonable belief that appellant was intoxicated. Moreover, Ferguson's testimony that he found appellant "passed out" in the front yard of a residence, which was the scene of a burglary, and appellant, when awakened, did not know where he was, why he was there, or why Ferguson was speaking to him warranted a reasonable belief that he was likely a danger to himself.

Moreover, Deputy Ferguson found appellant in the front yard of Ortiz's house, and the definition of "pubic place" includes those places to which the public has access. *See Loera v. State*, 14 S.W.3d 464, 467 (Tex. App.—Dallas 2000, no pet.) (stating that pertinent question is "whether the place is one to which the public has access."). Although the term "access" is not defined in the penal code,

it is commonly defined as "freedom of approach or communication, or the means, power, or opportunity of approaching, communicating, or passing to and from." BLACK'S LAW DICTIONARY 13 (6th ed. 1990). The evidence supports a reasonable inference that appellant used a public street or sidewalk to access Ortiz's front yard. *See Loera*, 14 S.W.3d at 468 (evidence justified trial court's conclusion that defendant rode bike on adjoining public sidewalks and street to private residence where he was arrested for pubic intoxication). Accordingly, we hold that the evidence supports the trial court's conclusion that Ferguson had probable cause to arrest appellant for the offense of public intoxication.

The State argues that because Deputy Ferguson had probable cause to arrest appellant, the search of his backpack was reasonable as a search incident to arrest. A search incident to arrest permits an officer to search a defendant, or areas within the defendant's immediate control, to prevent the concealment or destruction of evidence. *McGee*, 105 S.W.3d at 615.

Appellant argues that the search of his backpack "cannot be deemed reasonable as 'incident' to arrest'" because he was not in the searched area. He urges us to compare the search of his backpack to the search of the car discussed in *Gant*, 556 U.S. 332, 1298 S. Ct. 1710. However, *Gant* applies to limit the scope of searches incident to arrest in the context of motor vehicles and it is inapplicable here where the search involved appellant's backpack. *See Walton v. State*, No. 01-

07-01027-CR, 2009 WL 3401118, at *2–3 (Tex. App.—Houston [1st Dist.] Oct. 22, 2009, no pet.) (mem. op., not designated for publication); *State v. Ogeda*, 315 S.W.3d 664, 666–67 (Tex. App.—Dallas 2010, pet. ref'd) (stating that Gant decision is based on circumstances unique to the vehicle context). Additionally, the Supreme Court held in *Gant* that the circumstances unique to the context of motor vehicles would justify a search incident to a lawful arrest when it was "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Gant*, 556 U.S. at 343, 129 S. Ct. at 1719 (quoting *Thornton v. United States*, 541 U.S. 615, 632, 124 S Ct. 2127, 2137 (2004)).

Appellant argues that the exception to the warrant requirement for a search incident to arrest does not apply here because he was unable to reach his backpack while he was secured in the backseat of Deputy Ferguson's patrol car. In *Chimel*, the Supreme Court held that a search incident to arrest may only include "the arrestee's person and the area 'within his immediate control,'" meaning the area from which the arrestee might obtain a weapon or destroy evidence. 395 U.S. at 763, 89 S. Ct. at 2040. This limitation ensures that the scope of a search "incident to arrest" remains within the confines of its purpose of "protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy." *Gant*, 556 U.S. at 339, 129 S. Ct. at 1716. When an arrestee cannot reach the area that the law enforcement officer seeks to search, the

justification for the search incident to arrest exception is absent and the exception does not apply. *Id.*

However, an officer, incident to a lawful arrest, may search the arrestee's person, any items or containers in their possession, and any items or containers that were "located within the arrestee's reaching distance at the time of arrest." *United States v. Curtis*, 635 F.3d 704, 711–712 (5th Cir. 2011). And a search is still incident to an arrest for "as long as the administrative process incident to the arrest and custody have not been completed." *Id.* at 712 (quoting *United States v. Finley*, 477 F.3d 250, 259 n. 7 (5th Cir. 2007). A search may take place "on the spot," at the time of arrest, or it may be conducted "later when the accused arrives at the place of detention." *Id.* (quoting *United States v. Edwards*, 415 U.S. 800, 803, 94 S. Ct. 1234, 1237 (1974))*; Williams v. State,* 726 S.W.2d 99, 101 (Tex. Crim. App. 1986).

Deputy Ferguson testified that the backpack was only inches away from appellant when Ferguson found him passed out in Ortiz's front yard. It was, therefore, within reaching distance and immediate control of appellant at the time he was arrested. And Ferguson had to assist appellant to his patrol car because appellant could not stand or walk unassisted. Thus, Ferguson had to go back to pick up the backpack. Ferguson then searched appellant's backpack within moments of arresting and placing appellant in the patrol car, and before he

11

removed appellant from the scene. "It is irrelevant that the arrest occurs immediately before or after the search, as long as sufficient probable cause exists for the officer to arrest before the search." *State v. Ballard*, 987 S.W.2d 889, 892 (Tex. Crim. App. 1999) (citing *Williams v. State*, 726 S.W.2d 99, 101 (Tex. Crim. App. 1986)).

Having held that the evidence supports the trial court's conclusion that Deputy Ferguson had probable cause to arrest appellant, we further hold that the evidence supports the trial court's conclusion that Deputy Ferguson's search of appellant's backpack was a reasonable search incident to arrest. Accordingly, we further hold that the trial court did not abuse its discretion in denying appellant's motion to suppress evidence.

Finally, we note that appellant argues that the search of his backpack cannot be justified as a reasonable inventory search because the State did not produce evidence of a standardized inventory policy or that Deputy Ferguson followed such a policy. Because the State does not rely on the inventory exception to the warrant requirement, we need not address this argument.

We overrule appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.

Terry Jennings
Justice

Panel consists of Justices Jennings, Sharp, and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).